# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LORI NIGRO, as parent and natural guardian   )
of O.S., a minor, and in her own right   )
  )
Plaintiff,   )
  )
      v.   )   Civil Action No. 21-552
  )   Judge Nora Barry Fischer
CENTRAL WESTMORELAND AREA   )
VOCATIONAL-TECHNICAL SCHOOL   )
AUTHORITY d/b/a CENTRAL   )
WESTMORELAND CAREER AND   )
TECHNOLOGY CENTER, CHRISTOPHER   )
KING   )
  )
Defendants.   )

## MEMORANDUM OPINION

### I.    INTRODUCTION

This is a civil rights case wherein Plaintiff Lori Nigro seeks damages against Central Westmoreland Area Vocational-Technical School ("Central Westmoreland") and one of its teachers, Christopher King ("King"), arising from a January 10, 2020 accident during which Plaintiff's minor[1] daughter, O.S., was injured in King's automotive technology class. Presently before the Court are the Defendants' Motion to Dismiss under Rule 12(b)(6) and their Brief in Support, (Docket Nos. 13; 14), Plaintiff's Response and Brief in Opposition, (Docket Nos. 16; 17), Defendants' Reply, (Docket No. 23), Plaintiff's Sur-Reply, (Docket No. 26), and several

---

[1] O.S. was 17 years old at the time of the accident, and has yet to reach the age of majority. (Docket No. 34 at 48). Accordingly, pursuant to the Local Rules of the United States District Court for the Western District of Pennsylvania, she will be referenced throughout this Opinion by her initials. LCvR 5.2(D)(2).

supplemental briefs filed by the parties (Docket Nos. 28-29; 32-34). The Court heard oral argument on September 22, 2021, and has reviewed the official transcript. (Docket No. 35). The Court has also reviewed video footage of the incident, which was entered into the record by the stipulation of the parties.[2] (Docket No. 22). After careful consideration of the parties' arguments in light of the allegations in Plaintiff's Amended Complaint, and for the following reasons, Defendants' Motion to Dismiss [13] will be granted.

II.    FACTUAL BACKGROUND[3]

On January 10, 2020, O.S. was a 17-year-old student at Central Westmoreland. (Docket No. 8 at ¶¶ 7, 9). During class that day, King gathered his students to observe a start-up test of a

---

[2]    Video footage of the incident in question was not attached to the Amended Complaint or referenced therein. (*See* Docket No. 8). Its existence was first referenced in Plaintiff's Brief in Opposition to the motion to dismiss, and it was entered into the record following the Court's Order to Show Cause. (Docket Nos. 17; 18; 20; 22). Because neither party disputes the authenticity of the video evidence, and each of Plaintiff's claims stems entirely from the events depicted therein, the Court properly considered the contents of the video when deciding the merits of the motion to dismiss without converting the same into a motion for summary judgment under Federal Rule of Civil Procedure 12(d). *See, e.g.*, *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 559-60 (3d Cir. 2002) ("The court is not permitted to look at matters outside the record; if such matters are considered, the FRCP 12(b)(6) motion to dismiss is, by the express terms of FRCP 12(b), converted into a motion for summary judgment. However … documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered.") (quoting 62 Fed. Proc., L.Ed. § 62:508); *cf. Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993).

The two video clips which were submitted show the students, including O.S., standing at or near the engine cart when King started it. The individuals in the videos were not wearing any facial protective gear or other safety equipment. Consistent with the allegations in paragraph 15 of the Amended Complaint, the videos show that an object was ejected shortly after the engine was started. They also show the reaction from King and the others after O.S. was struck by the projectile.

[3]    The largely undisputed facts of this case have been gleaned from Plaintiff's Amended Complaint. (Docket No. 8). As it is bound to do when considering a motion to dismiss, the Court accepts all well-pleaded facts as true, and views them in the light most favorable to the Plaintiff as the non-moving party. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). However, the Court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (internal citations omitted).

student-built engine without inspecting or testing the engine first; without warning them of the danger posed by a potential malfunction; and without instructing them to wear any safety equipment. (*Id.* at ¶¶ 10-14). After the engine was started, a piece of metal was suddenly and violently ejected, striking O.S. in the face and causing extensive injuries. (*Id.* at ¶¶ 15-16). The physical injuries she sustained as a result of the malfunction include the loss of eight teeth, a shattered buccal (upper jaw) bone, lacerations to her lower lip and right index finger, bruising, and more. (*Id.* at ¶ 18). The accident also affected her mental health, causing nervousness, tension, anxiety, and depression. (*Id.*).

III.    PROCEDURAL HISTORY

Plaintiff commenced the present suit against Central Westmoreland in the Court of Common Pleas, (Docket No. 1-1), which later removed the case to this Court. (Docket No. 1). After removal, Plaintiff amended her complaint and added King as a named defendant, raising the following claims: (1) negligence against Central Westmoreland and King; (2) a substantive due process claim under 42 U.S.C. § 1983 against Central Westmoreland, for injuries resulting from a practice, policy, or custom; (3) a substantive due process claim under 42 U.S.C. § 1983 against Central Westmoreland, for injuries resulting from the failure to train or supervise King; (4) a substantive due process claim under 42 U.S.C. § 1983 against King, for injuries resulting from a state-created danger/special relationship; (5) Loss of Services; and (6) a demand for punitive damages. (Docket No. 8).

In response to Plaintiff's Amended Complaint, Defendants filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), seeking the dismissal of all claims. (Docket No. 13). As noted, the parties extensively briefed various arguments for and against the motion to dismiss, and the Court heard oral argument. The motion is now fully briefed and ripe for disposition.

3

IV.    LEGAL STANDARD

A motion to dismiss tests the legal sufficiency of the complaint. *S.K. v. N. Allegheny Sch. Dist.*, 146 F. Supp. 3d 700, 708 (W.D. Pa. 2015) (Conti, C.J.) (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993)). To survive a motion to dismiss, a plaintiff does not need to plead detailed factual allegations; rather, she must only show a plausible entitlement to relief. *See id.* at 709 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (citing *Twombly*, 550 U.S. at 556).

When assessing the plausibility of a complaint, the United States Court of Appeals for the Third Circuit ("Court of Appeals") has articulated a three-step process. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016); *see also Oakwood Laboratories LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021). The first step involves articulating the necessary elements of the plaintiff's claims. *See id*; *see also Iqbal*, 556 U.S. at 675. The second step scrutinizes the allegations in the complaint, calling for the court to identify and disregard any "formulaic recitation of the elements of a claim or other legal conclusion" and "allegations . . . [that] are . . . so threadbare or speculative that they fail to cross the line between the conclusory and the factual." *Connelly*, 809 F.3d at 789-90 (alteration, internal quotation marks, and citations omitted). The third and final step requires the Court to evaluate the remaining allegations, assuming their veracity and viewing them in the light most favorable to the plaintiff, to determine whether plaintiff has plausibly pled a claim. *See id.* And while courts generally do not consider affirmative defenses at the motion-to-dismiss stage of a case, they may be addressed when they appear on the face of the complaint. *See Morrison v. Chatham Univ.*, 2016 WL 4701460, at *4 (W.D. Pa. Sept. 8, 2016) (citing *Ball v.*

*Famiglio,* 726 F.3d 448, 459 n.16 (3d Cir. 2013), *partially abrogated on other grounds by Coleman*

*v. Tollefson,* 575 U.S. 532, (2015)); *see also Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245,

259 (3d Cir. 2014).

V.    DISCUSSION

Defendants move to dismiss all six counts in Plaintiff's Amended Complaint for failure to

state a claim.  They maintain that Plaintiff has failed to plead plausible claims for relief under §

1983 at Counts II, III and IV; that they are entitled to immunity from the state law negligence claim

at Count I under the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S. §§ 8541, *et*

*seq.*; and that the standalone claims for loss of services and punitive damages at Counts V and VI

are likewise subject to dismissal. (*See* Docket No. 14). While Plaintiff concedes that punitive

damages cannot be recovered from Central Westmoreland under § 1983, (Docket No. 35 at 48),

she argues that she has sufficiently pled each of her causes of action to permit the case to go

forward through discovery. (*See* Docket No. 17). Having reviewed the Amended Complaint, the

parties' arguments, the standard of review, and the prevailing law, the Court finds that all of

Plaintiff's claims are subject to dismissal for failure to state a claim.  The Court's rationale follows,

starting with the § 1983 claims.

A.    § 1983 Claims

Section 1983 serves as a means of vindicating violations of federal constitutional and

statutory rights. It provides that:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law.

42 U.S.C. § 1983; *see also Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). In order to properly state a valid § 1983 claim, a plaintiff must demonstrate that a person acting under color of law violated enumerated constitutional or statutory rights. *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000). Here, Plaintiff asserts that Defendants violated O.S.'s constitutionally protected liberty interest in personal bodily integrity. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008) ("Individuals have a constitutional liberty interest in personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment.").

The United States Supreme Court's seminal decision in *Monell*, as well as subsequent caselaw interpreting that decision, gives rise to two types of substantive due process claims: liability based on the governmental entity's policy, practice, or custom; and liability based on its failure to train its officials, authorities, and employees. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *see, e.g.*, *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019). However, *Monell* expressly rejects the proposition that a municipal entity may be held responsible for the actions of its municipal employees under a *respondeat superior* theory of liability. *Monell*, 436 U.S. at 691.

Additionally, the Court of Appeals for the Third Circuit recognizes the "state-created danger" doctrine, whereby liability may be imposed under § 1983 for constitutional deprivations where the affirmative action of a state actor leaves the victim more vulnerable to a direct and foreseeable harm than if the state actor had not acted. *See Johnson v. City of Phila.*, 975 F.3d 394, 400 (3d Cir. 2020). Yet, the Due Process Clause does not impose upon the government an affirmative duty to protect individuals from harm. *See DeShaney v. Winnebago County Dept. of Soc. Servs.,* 489 U.S. 189, 195-96 (1989).

In her Amended Complaint, Plaintiff brings three distinct § 1983 claims against Central Westmoreland and/or King based on the same core theory that O.S. was deprived of her substantive due process right to personal bodily integrity when she was injured in the automotive class accident: Count II raises a *Monell* claim against Central Westmoreland asserting that O.S.'s injuries were the result of the school's established policy, practice, or custom; Count III seeks to hold Central Westmoreland responsible under *Monell* because the accident was allegedly caused by Central Westmoreland's failure to adequately train and supervise King; and, Count IV raises a claim against King under the state-created danger theory, i.e. his actions on the date in question left O.S. more vulnerable to the malfunctioning engine than if he had not acted. The Court will address the viability of each claim, in turn.

*i.  Monell* Claim – Policy, Practice, or Custom

Where a plaintiff seeks to recover on the basis of an official policy or established custom, she must identify the policy or custom in question, and must further allege facts which show that it was the proximate cause of her injuries. *Estate of Roman*, 914 F.3d 789, 798. The Court of Appeals has acknowledged that *Monell* "created a 'two-path track' to municipal liability, depending on whether a § 1983 claim is premised on a municipal policy or custom." *McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009). "Policy" is made by a decisionmaker possessing final authority for the municipality. *Estate of Roman*, 914 F.3d at 798. "Custom" can be proven by showing that a given course of conduct is so well-settled and permanent as virtually to constitute law. *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (internal citations omitted). As the Supreme Court has recognized, "although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 'person,' by the very terms of the statute,

may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 690-91.

Plaintiff alleges in Count II that the injuries to O.S. resulted from "a recognized and accepted policy, custom and practice" at Central Westmoreland, but she does not identify an official policy which plausibly can be said to have caused the accident in question. (*See* Docket No. 8 at ¶¶ 27-36). Instead, viewing the allegations in the light most favorable to Plaintiff and resolving all inferences in her favor, Count II attempts to assert a substantive due process violation resulting from the unofficial practice or custom of "testing student made automotive products in the immediate presence of other students without first examining and testing said products outside the presence of students to ensure that the automotive products will not malfunction and pose a risk of harm to students." (Docket No. 8 at ¶ 31).

When a plaintiff proceeds on a theory of municipal liability based on an unofficial custom, the Court of Appeals has held that a plaintiff does not need to identify a specific decisionmaker who approves of the custom. *See Fletcher v. O'Donnell,* 867 F.2d 791, 793–94 (3d Cir. 1989) (internal citation omitted); *see also Bielevicz*, 915 F.2d at 850. However, the municipality's knowledge of the custom and acquiescence in its ongoing practice must be pled, i.e. a plaintiff must allege "that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations." *McTernan*, 564 F.3d at 658; *see also Bielevicz*, 915 F.2d at 851. Finally, a plaintiff must plead both the existence of a municipal custom and that said custom was the proximate cause of the constitutional deprivation. *Bielevicz*, 915 F.2d at 850 (citing *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir.1984)).

In the present matter, Plaintiff's Amended Complaint adequately identifies the custom at

issue, which is King's testing of motors in the classroom. (Docket No. 8 at ¶ 31). Further, the proximate causation between that custom and O.S.'s injuries is self-evident, as O.S. might not have been struck and injured when the engine malfunctioned if she had not been summoned to watch the demonstration of the student-built motor without protective equipment. Nonetheless, while she notes that King has tested student-built engines in his classroom previously, (Docket Nos. 8 at ¶ 31; 35 at 34), Plaintiff fails to allege that this custom has previously been called to the attention of school authorities or otherwise resulted in an injury to a student, such that the school would be placed on notice of the dangerous nature of King's classroom activities.[4] (*See* Docket No. 8). Quite simply, Plaintiff fails to set forth any facts which show that the decisionmakers at Central Westmoreland knew about King's custom and acquiesced in its continued existence. In fact, Plaintiff's Amended Complaint does not identify, by name or by reference, a single school administrator, official, teacher, or employee at Central Westmoreland besides King. (*See* Docket No. 8).

While Plaintiff alleges that King himself was a municipal policymaker for Central Westmoreland such that his actions could be directly attributable to the municipality, (*see* Docket No. 8 at ¶ 32), this Court need not accept such a legal conclusion when considering the merits of a motion to dismiss under Rule 12(b)(6). *See, e.g., Fowler*, 578 F.3d 203, 210-11 (quoting *Iqbal*, 556 U.S. at 678). To that end, the Court of Appeals has held that "[i]n order to identify who has policymaking responsibility, 'a court must determine which official has final, unreviewable discretion to make a decision or take an action.'" *Bielevicz*, 915 F.2d at 850 (internal citations

---

[4]      During oral argument, counsel for the Plaintiff conceded that he was unaware of any previous accidents which occurred during King's testing of motors in the presence of his students. (Docket No. 35 at 34).  Although the Court's decision to dismiss the claim is based solely on the allegations in the Amended Complaint, this concession supports the Court's conclusion that leave to amend this claim would be futile. *See infra* pp. 20-21.

omitted). Viewing the allegations and all reasonable inferences in Plaintiff's favor, King's role at Central Westmoreland is that of a teacher. (*See* Docket No. 8). Plaintiff has not set forth any factual allegations which would suffice to show that he served as a policymaker for the school at the time of the accident, nor that he otherwise had final authority on behalf of the school to acquiesce in the custom's ongoing practice therein. (*Id*.).

Therefore, Plaintiff's *Monell* claim based on policy, practice or custom fails to state a claim upon which relief can be granted, and Count II of her Amended Complaint must be dismissed.

ii.       *Monell* Claim – Failure to Train or Supervise

It is well-established that a plaintiff cannot premise municipal liability for constitutional deprivations on a theory of *respondeat superior* or vicarious liability because "[a] 'person' is not the 'moving force behind the constitutional violation' of a subordinate, unless that 'person' – whether a natural one or a municipality – has exhibited deliberate indifference to the plight of the person deprived." *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). As opposed to liability based on a municipality's official policy or established custom, a plaintiff who pursues a § 1983 claim under *Monell* for the failure to train or supervise does not need to identify any particular policy or custom that is at issue, because it is the decision not to train or supervise that causes the constitutional deprivation. *Estate of Roman*, 914 F.3d at 798. However, a plaintiff must plead that the municipality's decision not to train or supervise "amounts to 'deliberate indifference' to the rights of persons with whom [the municipality's] employees will come into contact." *Johnson*, 975 F.3d at 403 (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by the municipality can the failure be properly thought of as an actionable city 'policy.'" *Canton*, 489 U.S. at 379.

Deliberate indifference is ordinarily proven by a pattern of similar constitutional

deprivations by untrained employees in the past, such that the municipality is put on notice that additional or different training is necessary. *Johnson*, 975 F.3d at 403. Again, Plaintiff alleges that King has conducted similar engine demonstrations in the past, but she does not assert that any of the prior engine tests has resulted in an injury to a student or other bystander. (*See* Docket No. 8). Nor does Plaintiff set forth any facts which show that the policymakers at Central Westmoreland were even aware of King's classroom demonstrations. (*Id.*). Thus, Plaintiff has not stated a plausible claim that Central Westmoreland was deliberately indifferent through a "pattern of similar constitutional violations by untrained employees." *Johnson*, 975 F.3d at 403 (quoting *Carter*, 181 F.3d at 357).

In the absence of a "pattern of recurring injuries" which puts the municipality on notice, *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165 (3d Cir. 2017), a party may still seek to prove the municipality's deliberate indifference in relation to an isolated incident where "the need for more or different training [was] so obvious." *Johnson*, 975 F.3d at 403 (quoting *Canton*, 489 U.S. at 390). But, our Court of Appeals has held that "a pattern of violations is the usual requirement," and that "a vague awareness of some broad threat" is generally insufficient to fit into the "narrow range of 'single-incident' liability." *H.U. v. Northampton Area Sch. Dist.*, -- F.3d --, 2021 WL 4810170, at *4 (3d Cir. 2021) (quoting *Connick v. Thompson,* 563 U.S. 51, 71-72 (2011)). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick,* 563 U.S. at 62. Following this authority, "[u]nder the single-violation theory, [a plaintiff must] plead [that]: (1) the violation of his federal rights was a highly predictable consequence of the School District's failure to train; and, (2) the likelihood of recurrence and predictability of the violation justifies a finding that that the School District's failure

to train reflected a deliberate indifference to the obvious consequence of their choice." *Ivers v. Brentwood Borough School District*, 2021 WL 2116367, at *4 (W.D. Pa., May 25, 2021). Stated differently, "[i]t [is] incumbent upon [plaintiff] to assert well-pleaded facts which permit a plausible inference of deliberate indifference grounded upon a risk of injury that was a 'highly predictable consequence' of the School District's failure to train its employees." *Id.* (quoting *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 226 (3d Cir. 2014)).

Here, viewing the allegations and all reasonable inferences in the light most favorable to Plaintiff, she broadly alleges that Central Westmoreland failed to train King regarding the safety of the students in his automotive technologies class, and sets forth a number of ways in which she believes King should have been trained to protect the safety of his students, including O.S. (*See* Docket No. 8 at ¶ 46). While it was certainly conceivable that a student-built engine might malfunction in King's class, "vague awareness of some broad threat is not enough" to impose *Monell* liability for failure to train. *H.U. v. Northampton*, 2021 WL 4810170 at *4. Further, it is well settled that negligence is insufficient to hold a municipality liable for the constitutional deprivations caused by its employees. *See Johnson*, 975 F.3d at 403.

Although Plaintiff has sufficiently pled negligence on the part of Central Westmoreland and King, she fails to present enough well-pleaded facts to give rise to a plausible inference that the school was deliberately indifferent to the risk of injury to the students in King's automotive technologies class. Nothing in the Amended Complaint supports Plaintiff's allegation that Central Westmoreland *intentionally* chose to disregard the concern for the safety of O.S. and the other students. *See Johnson,* 975 F.3d at 403. Plaintiff has not presented facts which establish that an injury such as the one sustained by O.S. was the "highly predictable" result of King's engine demonstrations such that Central Westmoreland had an obligation to provide new or different

12

training thereon. *Thomas*, 749 F.3d at 226. Thus, Count III of Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted, and will be dismissed.

*iii.*    State-Created Danger Claim

At Count IV of the Amended Complaint, Plaintiff claims that King violated O.S.'s substantive due process rights under a "state-created danger" theory of liability.[5] The Court of Appeals has established a four-part test for determining whether a plaintiff has raised a viable state-created danger claim, i.e., a municipal entity may be held liable for the constitutional violations of its employees if: (1) the harm suffered was foreseeable and fairly direct; (2) the individual acted with "a degree of culpability that shocks the conscience"; (3) some relationship existed between the government and the plaintiff which made the plaintiff a foreseeable victim, not just a member of the general public; and (4) the affirmative use of authority in some way created the danger or made others more vulnerable than if the government actor had not acted. *Johnson*, 975 F.3d at 400 (citing *Sauers v. Borough of Nesquehoning,* 905 F.3d 711, 717 (3d Cir. 2018)).

Here, Plaintiff alleges that O.S. was a teenage student in King's automotive technology class at Central Westmoreland. (Docket No. 8 at ¶¶ 6-7, 9). She further asserts that automotive engine work is inherently dangerous, especially where the work is being performed by amateur students rather than experienced professionals. (*See* Docket No. 8 at ¶ 17). Knowing that amateur

---

[5]    The title of Count IV of Plaintiff's Amended Complaint also references liability based on a "special relationship" between O.S. and King. However, the Court of Appeals has decisively rejected the argument that a special relationship exists between a public school and its students, such that it has an affirmative duty to provide care and protection. *See Black v. Indiana Area Sch. Dist.*, 985 F.2d 707, 713 (3d Cir. 1993). Beyond a passing reference in the title of Count IV, Plaintiff has not developed this claim in her pleading, and has not addressed this theory again in her briefing or at oral argument. In light of same, the Court finds that to the extent that Plaintiff seeks to recover on a theory of a special relationship, she has failed to state a plausible claim upon which relief can be granted.

high-school students would build and test automotive engines in King's class, Plaintiff contends that it was foreseeable under the first prong that a student-built engine could malfunction, and that said malfunction could cause injury to a student in the class. (Docket No. 8 at ¶ 51). The Court agrees and holds that Plaintiff has pled enough facts to plausibly meet the first prong of the state-created danger test.

As to the third prong, the Court concurs with Plaintiff that she has plausibly alleged that O.S. was a foreseeable victim, not merely a member of the general public. (Docket No. 8 at ¶ 55). To that end, if one of the student-built engines in King's classroom malfunctioned, the expected victim would be someone in the classroom, such as King or one of his students.

The fourth prong requires that the plaintiff allege an affirmative use of state authority in a way that created the danger or made the victim more vulnerable to harm than if the actor took no action. Plaintiff alleges that King affirmatively instructed his students to stand near the engine in order to observe the startup test. (Docket No. 8 at ¶ 11). In doing so, Plaintiff contends that King left O.S. and the other students more vulnerable to being injured by an engine malfunction than if they had not been situated close to the engine at the time it failed. (Docket Nos. 8 at ¶ 56; 17 at 11). Hence, Plaintiff has also satisfied the fourth prong of the state-created danger test.

However, viewing the allegations as true and all reasonable inferences in the light most favorable to Plaintiff, she has not presented sufficient facts to satisfy the second prong of the state-created danger test, which requires the state actor to have acted "with a degree of culpability that shocks the conscience." *Johnson*, 975 F.3d at 400. While "shocks the conscience" is not easily defined, the Court of Appeals has held that it is a fluid standard which changes based on the surrounding circumstances. *See Kedra v. Schroeter*, 876 F.3d 424, 437 (3d Cir. 2017) ("The exact level of culpability required to shock the conscience . . . depends on the circumstances of each

case, and the threshold for liability varies with the state actor's opportunity to deliberate before taking action."). In "hyperpressurized environments requiring a snap judgment," actions will only shock the conscience where the actor actually intends to cause harm. *Id.* (quoting *Vargas v. City of Phila.*, 783 F.3d 962, 973 (3d Cir. 2015)). Where the actor must act "in a matter of hours or minutes," his or her actions shock the conscience when they "disregard a great risk of serious harm." *Id.* Finally, where the actor has time to make an "unhurried judgment," deliberate indifference is sufficient to shock the conscience. *Id.* (internal citation omitted).

In the present case, King's decision to call his class together before conducting the motor test does not appear to be a hurried decision. Thus, his actions can only shock the conscience if he acted with deliberate indifference. Here, no facts have been pled which give rise to an inference that King *intentionally* disregarded the risk to O.S. and the other students, and negligent acts of a state actor are insufficient to give rise to a substantive due process cause of action. *See Johnson,* 975 F.3d at 402 (quoting *Daniels v. Williams*, 474 U.S. 327, 328 (1986)). Because Plaintiff's Amended Complaint does not outline plausible facts which meet the second prong of the state-created danger test, Count IV fails to state a claim upon which relief can be granted, and must also be dismissed.

B.    Plaintiff's Negligence Claim

Plaintiff's Amended Complaint also raises a negligence claim against both Defendants under Pennsylvania tort law. (Docket No. 8). With respect to this claim, both parties raise the applicability of the PSTCA, 42 Pa.C.S. §§ 8541 *et seq.*, which affords municipalities broad immunity from claims stemming from injury to a person or property as a result of any act of a municipality or municipal employee. *Basile v. Twp. of Smith*, 752 F. Supp. 2d 643, 668 (W.D. Pa. 2010). This protection is extended to employees inasmuch as they are acting within the scope of

their official duties. *Id.* (citing *Robbins v. Cumberland Cnty. Children & Youth Servs.*, 802 A.2d 1239, 1252 (Pa. Commw. Ct. 2002)). However, the PSTCA also includes several enumerated exceptions to governmental immunity, including the vehicle exception, which provides in relevant part:

> The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

> (1) Vehicle liability --The operation of any motor vehicle in the possession or control of the local agency, provided that the local agency shall not be liable to any plaintiff that claims liability under this subsection if the plaintiff was, during the course of the alleged negligence, in flight or fleeing apprehension or resisting arrest by a police officer or knowingly aided a group, one or more of whose members were in flight or fleeing apprehension or resisting arrest by a police officer. As used in this paragraph, "motor vehicle" means any vehicle which is self-propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.

42 Pa.C.S. § 8542(b)(1).

At the outset, the Court notes that governmental immunity under the PSTCA is a statutory defense to tort claims, and the vehicle exception in question is one of several enumerated exceptions to that immunity. "While ordinarily a party may not raise affirmative defenses at the motion to dismiss stage, it may do so if the defense is apparent on the face of the complaint." *Budhun*, 765 F.3d at 259 (internal citations omitted). Governmental immunity is not only apparent from the face of the Amended Complaint, but it is actually raised preemptively therein by the Plaintiff. (Docket No. 8 at ¶ 24). As such, the Court can and will address the merits of the parties' respective arguments concerning governmental immunity and the vehicle exception under the

16

PSTCA.

The statutory language of the PSTCA's vehicle exception plainly defines what constitutes a motor vehicle for the purposes of the immunity statute, and the touchstone inquiry for determining whether an object should be considered a vehicle is whether that object is capable of self-propulsion[6] or attached to an object which is capable of self-propulsion. *See* 42 Pa.C.S. § 8542(b)(1) ("'Motor vehicle' means any vehicle which is self-propelled and any attachment thereto"). The engine which injured O.S. meets neither requirement.[7] While an engine can enable a vehicle to propel itself when properly installed as a component thereof, the engine alone cannot self-propel without the remaining component parts of the vehicle, including (at the bare minimum) the drivetrain components of a vehicle, including its transmission, chassis, wheels, and tires. Plaintiff fails to allege that the engine in question was attached to the remaining components of a vehicle, or otherwise incorporated into a vehicle, such that it was capable of self-propulsion at the time it malfunctioned and injured O.S. (*See* Docket No. 8). Further, she fails to cite any authority whatsoever, in either the state or federal courts, which construes the vehicle exception so broadly. Likewise, the Court's independent research failed to uncover any case which stands for the proposition that an engine, alone, constitutes a vehicle under the motor vehicle exception of the PSTCA.

Accordingly, the vehicle exception codified at 42 Pa.C.S. § 8542(b)(1) does not apply in

---

[6]    Although the PSTCA does not provide a statutory definition for the term "self-propelled," the Collins dictionary definition, i.e. "propulsion of a vehicle through its own source of tractive power rather than by an external means," aligns with the Court's understanding of the term. Collins English Dictionary (12th Ed. 2014).

[7]    The video clips show that the engine was mounted on a cart or stand. Although the cart may have wheels that enable it to be moved, it is not self-propelled, as it relies on an external force for movement rather than the tractive power created by the engine itself. Nor can the cart be seen as an attachment to a vehicle.

the present case, and Central Westmoreland is entitled to governmental immunity under 42 Pa.C.S. § 8541. Because the Court also finds that King was acting in his official capacity as the instructor of the automotive technologies class at the time the engine malfunctioned, and the Amended Complaint does not contain facts which show that King committed willful misconduct, he is also entitled to governmental immunity under the PSTCA. 42 Pa.C.S. §§ 8545, 8550. Therefore, Plaintiff cannot recover against either defendant on her negligence cause of action, and Count I of her Amended Complaint will be dismissed for failure to state a plausible claim upon which relief can be granted.

C.    Damages

Plaintiff's Amended Complaint also includes a claim against both defendants for loss of services at Count V, as well as a demand for punitive damages at Count VI. Neither claim is cognizable as its own cause of action, but are instead types of damages that can be recovered in the event that Plaintiff establishes liability.

With respect to Plaintiff's loss of services, counsel conceded at oral argument that this claim is derivative of Plaintiff's negligence claim, not her federal constitutional claims. (Docket No. 34 at 48). Though Plaintiff cites language from the Court of Appeals in support of her contention that she can recover on her loss of services claim, (Docket No. 17 at 11), the very language Plaintiff cites notes that "[i]n appropriate circumstances, *damages* may be awarded for the loss of services and earnings of a child during her minority and also for the loss of contributions which a parent might reasonably expect to receive from the child during his lifetime." *Dugas v. Nat'l Aircraft Corp.*, 438 F.2d 1386, 1392 (3d Cir. 1971) (emphasis added). Plaintiff does not cite any case, and the Court has found none, which stands for the proposition that loss of services is cognizable as its own cause of action. Accordingly, because this Court has dismissed Plaintiff's

18

tort claims under the PSTCA, her derivative claim for loss of services must also fail, and Count V will be dismissed.

Plaintiff next asserts a claim at Count VI for punitive damages against both defendants. Yet, Plaintiff conceded at oral argument that established federal jurisprudence does not allow for recovery of punitive damages from municipal entities in § 1983 actions. (Docket No. 34 at 48). Indeed, the Supreme Court has expressly held that "municipalities are immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). This is because punitive damages are awarded to punish bad actors, not to compensate victims for their losses, and "[c]ompensation [is] an obligation properly shared by the municipality itself, whereas punishment [is] properly applied only to the actual wrongdoers." *City of Newport*, 453 U.S. at 263. Thus, Plaintiff cannot recover punitive damages against Central Westmoreland based upon her constitutional causes of action.

Plaintiff maintains that she is entitled to pursue punitive damages in relation to her negligence claim against Central Westmoreland, but Pennsylvania law is clear that punitive damages cannot stand alone as a claim for relief, and are merely a form of damages which may be awarded. *See, e.g.*, *Kirkbride v. Lisbon Contractors, Inc.*, 555 A.2d 800, 802 (Pa. 1989); *see also Waltman v. Fahnestock & Co., Inc.*, 792 F. Supp. 31, 33 (E.D. Pa. 1992) (applying Pennsylvania law), *judgment aff'd*, 989 F.2d 490 (3d Cir. 1993). Because the Court has dismissed Plaintiff's negligence claim at Count I of the Amended Complaint, and punitive damages cannot stand alone as a cause of action, she cannot recover punitive damages from Central Westmoreland.

While punitive damages can be recovered from a municipal employee or official (i.e. King) in his or her personal capacity where the circumstances call for the same, *City of Newport*, 453 U.S. at 269, the Court is once again mindful that punitive damages cannot stand alone as a cause

of action. *See, e.g.*, *Kirkbride*, 555 A.2d at 802; *see also Waltman*, 792 F. Supp. at 33. Because all other claims brought against King have been dismissed, and the claim for punitive damages cannot stand as its own cause of action, Plaintiff also fails to state a claim upon which relief can be granted for punitive damages against King. Accordingly, Defendants' motion to dismiss Count VI of Plaintiff's Amended Complaint will be granted and that count will also be dismissed.

D.      Leave to Amend

Finally, the Court addresses whether the dismissal of Counts I-VI of Plaintiff's Amended Complaint should be with prejudice or without prejudice. The Court of Appeals has held that in civil rights cases "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245; *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 113 (3d Cir. 2002). "Leave to amend may be denied for futility if 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *Hayden v. Westfield Ins. Co.*, 586 F. App'x 835, 841 (3d Cir. 2014) (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) and citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).

Here, the Court finds that any further amendment of Plaintiff's claims would be futile given the Court's analysis set forth above. In addition, Plaintiff already filed an amended pleading in this matter and has not affirmatively sought leave to file a second amended complaint nor supplied this Court with a proposed pleading, such that leave to amend may be denied on these grounds as well. *See, e.g.*, *U.S. ex rel. Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 243 (3d Cir. 2013) ("[A] 'bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought . . .—does not constitute a motion within the contemplation of Rule 15(a).'") (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1280 (D.C. Cir. 1994));

*McWreath v. Range Res.–Appalachia, LLC*, 645 F. App'x 190, 196 (3d Cir. 2016) ("[T]he failure to submit a draft amended complaint 'is fatal to a request for leave to amend'") (quoting *Zizic*, 728 F.3d at 243). Accordingly, the Court will dismiss Counts I-VI of Plaintiff's Amended Complaint with prejudice.

VI.     CONCLUSION

As Judge Matey cautioned in his concurring opinion in *Johnson*, "[m]any state-created danger cases are tragic and unsettling […] [b]ut the Due Process Clause of the Fourteenth Amendment 'does not transform every tort committed by a state actor into a constitutional violation." *Johnson*, 975 F.3d at 405 (Matey, J., concurring) (quoting *DeShaney*, 489 U.S. at 202). The majority opinion in *Johnson* further contemplated that "not every injury has a legal remedy, and courts, particularly federal courts, may provide relief in limited circumstances." *Johnson*, 975 F.3d at 396. While the injuries suffered by O.S. in this matter are likewise "tragic and unsettling," her Amended Complaint fails to state a claim upon which relief can be granted. For the foregoing reasons, Defendants' Motion to Dismiss is granted and Plaintiff's Amended Complaint is dismissed, with prejudice. An appropriate Order follows.


*/s Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated:  November 30, 2021

cc/ecf:  All counsel of record.

21