IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LORI NIGRO, as parent and natural guardian of O.S., a minor, and in her own right,<br><br>Plaintiff,<br><br>v.<br><br>CENTRAL WESTMORELAND AREA VOCATIONAL-TECHNICAL SCHOOL AUTHORITY d/b/a CENTRAL WESTMORELAND CAREER AND TECHNOLOGY CENTER; CHRISTOPHER KING,<br><br>Defendants. | Civil Action No. 21-552<br>Judge Nora Barry Fischer |

## **MEMORANDUM OPINION**

I.     INTRODUCTION

Plaintiff Lori Nigro, parent and natural guardian of O.S., asks the Court to amend its judgment, entered on November 30, 2021, under Federal Rule of Procedure 59(e). (Docket No. 38). Plaintiff wants the Court to alter its judgment so that the dismissal of Plaintiff's first amended complaint is "without prejudice," rather than "with prejudice." (*Id.* at 5). Altering the judgment would permit Plaintiff to file a second amended complaint. In the alternative, Plaintiff seeks leave to file a second amended complaint under Federal Rule of Civil Procedure 15(a)(2). (*Id.* at 8). In support of its motion, Plaintiff attached a proposed second amended complaint. (Docket No. 38-1). Defendants oppose the relief requested by Plaintiff and argue that the proposed amendment of her pleading is futile. (Docket Nos. 41; 45).

Also before the Court are Plaintiff's brief in support of her motion; Defendants' response; Plaintiff's reply; and Defendants' sur-reply (Docket Nos. 38; 38-1; 41; 43; 45). After careful

consideration of the parties' positions, and for the following reasons, Plaintiff's Motion [38] is denied.

II.     BACKGROUND

In all versions of her complaint, Plaintiff alleges that O.S.'s teacher, Defendant Christopher King, fired up an engine in O.S.'s automotive technology class, causing a piece of metal to fly off of the engine and strike O.S. in the face. (Docket Nos. 1-1, 8, 38). Plaintiff sued in state court, and Defendant removed the suit to federal court on April 26, 2021. (Docket No. 1). Plaintiff submitted an amended complaint on May 27, 2021. (Docket No. 8). In this first amended complaint, Plaintiff sued the school, Central Westmoreland Area Vocational-Technical School Authority ("Central Westmoreland"), and the teacher, King. (*Id.*). She brought four substantive counts, along with collateral claims for loss of services and punitive damages. The counts included (1) a negligence claim against Central Westmoreland and King; (2) a substantive due process claim under 42 U.S.C. § 1983 against Central Westmoreland, for injuries resulting from a practice, policy, or custom; (3) a substantive due process claim under 42 U.S.C. § 1983 against Central Westmoreland, for injuries resulting from the failure to train or supervise King; and (4) a substantive due process claim under 42 U.S.C. § 1983 against King, for injuries resulting from a state-created danger. (Docket No. 8 at 4-11).

Central Westmoreland and King brought a motion to dismiss all counts in the first amended complaint which the Court granted, with prejudice, after briefing and oral argument. (Docket Nos. 36, 37). Plaintiff now asks that the Court amend its judgment pursuant to Federal Rule of Civil Procedure 59(e) to permit her to file a proposed second amended complaint. In the alternative, Plaintiff asks the Court to permit her to file the proposed second amended complaint under Federal Rule of Civil Procedure 15(a)(2). Plaintiff's proposed second amended complaint is narrower than

her previous pleading. In it, she brings a single substantive due process claim under 42 U.S.C. § 1983 against King, for injuries resulting from a state-created danger. (Docket No. 38-1). Central Westmoreland is not named as a defendant in the proposed second amended complaint. (*Id.*). The latest complaint includes a mixture of allegations from the previous pleading as well as several new allegations detailing how King allegedly "rigged" the engine. (*Id.*). The Court quotes the operative facts of the proposed second amended complaint in full:

> 8. On January 10, 2020, minor plaintiff was in her automotive technology class being taught by defendant King.
>
> 9. Prior to said date, students in the class, including minor plaintiff, constructed an automotive engine at the instruction and supervision of defendant King.
>
> 10. On January 10, 2020, defendant King instructed the students to gather around the automotive engine for a test and demonstration of the engine.
>
> 11. Defendant King was attempting to "rig" the engine in order to get it to fire.
>
> 12. The engine needed to be rigged because a student in minor plaintiff's group previously dropped the original crank shaft causing it to bend and be unusable.
>
> 13. This forced minor plaintiff's group to utilize a different crank shaft model on the engine.
>
> 14. As a result, minor plaintiff's group's engine required a wiring harness that neither defendant King nor the school possessed.
>
> 15. The approximate cost of the appropriate wiring harness was $100.00.
>
> 16. Rather than obtain the appropriate wiring harness to ensure that the engine functioned safely, defendant King attempted a quick fix.
>
> 17. Specifically, defendant King cut off a part to a different crank shaft and bolted it to the front of the subject engine.
>
> 18. Defendant King also positioned a piece of metal on the side in an attempt to hold the crank shaft sensor.
>
> 19. Defendant King had to fit the piece of metal at an angle such that the sensor was aligned with the crank shaft that was bolted to the front of the engine.

20. Most shockingly, defendant King attempted to hold this intact with a vise grip or clamp.

21. Defendant King failed to adequately secure the clamp to the engine making it likely that the clamp would break free from the engine should the engine be started.

22. Defendant King's actions show that he attempted to make a quick-fix solution at the expense of the safety of students in the classroom, including minor plaintiff.

23. Defendant King failed to obtain the proper automotive part to ensure that the engine, and its component parts, operated as intended and without malfunction.

24. After placing the clamp on the engine, and without first inspecting the engine, defendant King started the engine with the students, including minor plaintiff, in close proximity.

25. Prior to starting the engine, defendant King never warned the students, including minor plaintiff, of the high likelihood that the engine or its component parts would malfunction.

26. The students, including minor plaintiff, stood around the engine with no protection and with no instruction from defendant King regarding any safety measures to take when observing the demonstration.

27. After defendant King started the automotive engine, the clamp, suddenly and without warning, broke free from the automotive engine and struck minor plaintiff in the face at a high rate of speed.

28. The sudden and violent impact caused minor plaintiff severe injuries.

(Docket No. 38-1).

Plaintiff filed a brief in support of her motion; Defendants countered with a response in opposition; Plaintiff replied; and Defendants submitted a sur-reply. (Docket Nos. 39; 41; 43; 45). As the briefing has concluded, Plaintiff's motion is now ripe for disposition.

III.   LEGAL STANDARD

Plaintiff seeks to file a second amended complaint pursuant to either Rule 59(e) or Rule 15(a)(2). According to the Third Circuit, "[w]hen a plaintiff moves to amend her complaint under Rule 59(e)," courts must "apply the same factors as when a party files a motion to amend a

pleading under Federal Rule of Civil Procedure 15(a)." *Klotz v. Celentano Stadtmauer & Walentowicz*, 991 F.3d 458, 462 (3d Cir. 2021). "Those factors include whether the amendment would be futile." *Id.* "A proposed amendment to a complaint is futile if the amended complaint would fail to state a claim for relief under Rule 12(b)(6)." *Id.* As such, the Court must assess whether Plaintiff's proposed second amended complaint states a claim for relief under Rule 12(b)(6). If not, then the Court will deny Plaintiff's motion to amend the judgment under Rule 59(e) or file an amended complaint under Rule 15(a)(2).

To state a claim under Rule 12(b)(6), a plaintiff must show a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009). When assessing the plausibility of a complaint, the Third Circuit has articulated a three-step process. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The first step involves articulating the necessary elements of the plaintiff's claims. *See id*; *see also Iqbal*, 556 U.S. at 675. The second step scrutinizes the allegations in the complaint, calling for the court to identify and disregard any "formulaic recitation of the elements of a claim or other legal conclusion" and "allegations. . . [that] are . . . so threadbare or speculative that they fail to cross the line between the conclusory and the factual." *Connelly*, 809 F.3d at 789-90 (alteration, internal quotation marks, and citations omitted). The third and final step requires the court to evaluate the remaining allegations, assuming their veracity and viewing them in the light most favorable to the plaintiff, to determine whether plaintiff has plausibly pled a claim*. See id.*

IV. DISCUSSION

Plaintiff's proposed second amended complaint brings a single § 1983 claim against King for allegedly violating O.S.'s substantive due process rights under a "state-created danger" theory of liability. (Docket No. 38-1). To state a plausible claim for relief, Plaintiff must allege facts showing that (1) the harm suffered by O.S. was foreseeable and fairly direct; (2) King acted with "a degree of culpability that shocks the conscience"; (3) some relationship existed between the government and O.S. which made O.S. a foreseeable victim, not just a member of the general public; and (4) the affirmative use of authority in some way created the danger or made others more vulnerable than if the government actor had not acted. *Johnson v. City of Phila.*, 975 F.3d 394, 400 (3d Cir. 2020). In its prior memorandum opinion, the Court explained that Plaintiff's first amended complaint alleged facts that satisfied the first, third, and fourth prongs of the state-created danger test. (Docket No. 36 at 13-14). Accordingly, the Court will limit its inquiry to the second prong: whether King's alleged actions shock the conscience.

"The exact level of culpability required to shock the conscience . . . depends on the circumstances of each case, and the threshold for liability varies with the state actor's opportunity to deliberate before taking action." *Kedra v. Schroeter*, 876 F.3d 424, 437 (3d Cir. 2017). Here, the Court previously determined that the first amended complaint alleged that King made an "unhurried judgment" when he gathered the students around the engine and turned it on. (Docket No. 36 at 15). "Where the actor has time to make an 'unhurried judgment[ ],' a plaintiff need only allege facts supporting an inference that the official acted with a mental state of 'deliberate indifference.'" *Kedra*, 876 F.3d at 437 (citation omitted). Deliberate indifference, in turn, means the person acted with "conscious disregard of a substantial risk of serious harm," or displayed a "willful disregard" demonstrated by actions that "evince a willingness to ignore a foreseeable

6

danger or risk." *Id.* (internal quotation marks and citation omitted). The mental state of deliberate indifference falls between intent to cause harm and acting negligently. *See id.*

After careful review of Plaintiff's allegations in her proposed second amended complaint, it is the Court's view that the second amended complaint does not allege facts showing that King acted with a degree of culpability that shocks the conscience. As such, the Court will deny Plaintiff's motion.

In the proposed second amended complaint, Plaintiff alleges that King "instructed the students to gather around" the engine they had built "for a test and demonstration." (Docket No. 38-1 at ¶ 10). A student had previously dropped the engine's original crank shaft on the ground, thus requiring the use of a different crank shaft model. (*Id.* at ¶ 13). This new crank shaft model required a "wiring harness" that was not available, although it only cost $100 to purchase. (*Id.* at ¶¶ 14-15). Rather than buy a wiring harness, King "attempted a quick fix" by "cutt[ing] off a part to a different crank shaft and bolt[ing] it to the front" of the engine. (*Id.* at ¶¶ 16-17). Also, King "positioned a piece of metal on the side" of the crank shaft to "hold the crank shaft sensor" and ensure "the sensor was aligned with the crank shaft." (*Id.* at ¶¶ 18-19). The crucial move came when King "attempted to hold [the piece of metal] intact with a vise grip or clamp." (*Id.* at ¶ 20). After "placing the clamp on the engine" and "without first inspecting the engine," King fired up the engine with O.S. standing nearby. (*Id.* at ¶ 24). King gave no instruction or warning about the possible danger of the engine and no one was given protection from flying debris. (*Id.* at ¶¶ 25-26). When King started the engine, the clamp "broke free" and struck O.S. in the face "at a high rate of speed." (*Id.* at ¶ 27). Plaintiff does not allege that prior accidents or near misses had occurred in the automotive class or in general.

In short, Plaintiff alleges that King attempted a quick fix that involved placing a clamp on the engine. When he started the engine, the clamp flew off and stuck O.S. in the face. A close review of the analogous case law shows that King's alleged actions, while arguably negligent, did not rise to the level of acting with "conscious disregard of a substantial risk of serious harm."

In *Johnson*, a 911 operator "inexplicably" instructed a family to remain inside the third floor of a burning apartment building but failed to tell the fire department that the family was waiting to be rescued. 975 F.3d at 397. The fire department arrived on the scene and put out the fire, but remained unaware of the family's presence and thus never attempted a rescue. *Id.* The family members died. *Id.* Applying the deliberate indifference standard, the Third Circuit explained, "the only reasonable inference is that the Operator neglected to relay" information about the family to the firefighters "through error, omission, or oversight." *Id.* at 402. It continued, "Nothing in the complaint or, indeed, ordinary experience supports the inference that the Operator deliberately chose to discard her concern for the Johnson Family's lives. For that reason, Appellant's claim against the Operator does not satisfy element two of the state-created danger theory." *Id.*

The reasoning in *Johnson* applies here. As in *Johnson*, the facts alleged in the proposed second amended complaint do not reveal that King "deliberately chose to discard" O.S.'s safety when he put a clamp on the engine and started it up. *See id.* Rather, the reasonable inference from the pleading is that King tried to improvise during the construction of an engine without thinking through the consequences of his actions. He may have been negligent, but he was not consciously disregarding a risk of substantial harm.

Courts throughout the Third Circuit have reached similar conclusions to this Court in factually analogous cases. For example, in *Green v. Mount Carmel Area School District*, a

8

chemistry teacher attempted to demonstrate a chemical reaction involving the ignition of methanol. 2019 WL 1787592, at *1 (M.D. Pa. Apr. 24, 2019). With students sitting in the first row of class, the teacher "poured some methanol into a container and attempted to light it on fire." *Id.* "Unsatisfied with the result," the teacher "added more methanol into the container, and again attempted to ignite the mixture with a match. The mixture exploded, and the explosion toppled the container and caused flaming liquid methanol to spill onto" one of the students in the first row. *Id.* When the teacher sought to extinguish the fire, she realized the classroom's fire blanket had not been removed from its shipping container and the classroom's chemical shower was not working. *Id.*

The court dismissed the § 1983 state-created danger claim, holding that the plaintiff "ha[d] not alleged facts giving rise to the inference that defendants acted with actual awareness or a conscious disregard of a substantial risk of serious harm." *Id.* at *7. In its analysis, the court explained that while the teacher skipped over safety checks, "the amended complaint alleges no facts suggesting or supporting the inference that Ms. Michaels knew her students would be in harm's way when she conducted the experiment." *Id.* at *4. Put another way, the court said that "there are no facts suggesting that she directed the explosion toward M.G. or any other student." *Id.* The court also found it important that the complaint lacked allegations that the teacher "was advised of the risk of harm and proceeded anyway" such as receiving a warning about the experiment from another teacher or observing a near miss in the past. *See id.* at *5-6.

Likewise, in *Lesher v. Zimmerman*, a softball pitcher was warming up for a game when her coach told her to pitch to him from the mound. 2018 WL 2239560, at *1 (E.D. Pa. May 16, 2018). The coach, who was standing in the batter's box, had been hitting grounders to different players for infield practice. *Id.* Without warning, the coach, a full grown man, hit the ball "at full-swing"

9

even though the pitcher was not behind a pitching screen. *Id.* The ball hit the pitcher in the face, causing severe injury. *Id.* The court observed that "[c]onsidering the typical risks associated with playing softball, this Court rejects Lesher's contention that Zimmerman's conduct, while unfortunately causing her serious injury, was so inherently dangerous to demonstrate deliberate indifference." *See id.* at *7. As in *Green*, the court in *Lesher* noted that the complaint did not contain allegations of prior incidents of harm resulting from the coach's actions, thus further reinforcing its conclusion that the coach did not "consciously disregard[] a substantial risk of serious harm." *See id.*

This Court finds the reasoning of *Green* and *Lesher* persuasive and applicable to the present case. The proposed second amended complaint's averments do not support an inference that King "directed" the clamp's path towards O.S. or "knew" O.S. would be put in harm's way when he told the class to gather around the engine. *See Green*, 2019 WL 2239560, at *4. The allegations do not raise the inference that the clamp was, with a certainty, going to fly off the engine, and thus King's "quick fix" was not so "inherently dangerous to demonstrate deliberate indifference." *Lesher*, 2018 WL 2239560, at *7. The Court's holding aligns with numerous other cases involving careless conduct by a coach, teacher, or other superior resulting in physical injury to a student, player, or subordinate. *M.U. v. Downington High Sch. E.*, 103 F. Supp. 3d 612 (E.D. Pa. 2015) (coach keeping soccer player in a game despite the player clashing heads and showing signs of severe pain did not shock the conscience when the player suffered a traumatic brain injury); *Beenick v. Lefebvre*, 2016 WL 5376120 (M.D. Pa. Sept. 16, 2016) (prison kitchen supervisor requiring prisoner to use electric watermelon slicer with exposed blade did not shock the conscience when the prisoner cut his fingers on the blade); *Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1378–79 (11th Cir. 2002) (teacher's decision to leave exposed high-voltage wires on a

student's desk during science experiment did not "shock the conscience" where student died after touching the wires); *Voorhies v. Conroe Ind. Sch. Dist.*, 610 F. Supp. 868, 872-73 (S.D. Tex. 1985) (no constitutional claim where shop teacher removed safety guard on a power saw causing student to severely lacerate hand).

Additionally, the proposed second amended complaint does not allege that King "was advised of the risk of harm and proceeded anyway." *See Green*, 2019 WL 2239560, at *5; *see also Dorely v. S. Fayette Twp. Sch. Dist.*, 129 F. Supp. 3d 220, 235 (W.D. Pa. 2015) (Hornak, J.) ("[I]f this was the first time any injury had resulted from the drill it may be difficult to say that the coaches were deliberately indifferent such that they 'consciously disregard[ed] a substantial risk of serious harm.'"). For example, the proposed second amended complaint does not allege that prior near-miss incidents had occurred in King's class or that anyone had warned King against using the clamp. (*See generally* Docket No. 38-1).

In sum, Plaintiff's proposed second amended complaint, like its predecessors, makes out a claim for negligence, at best. The allegations do not "shock the conscience," and therefore it is the Court's opinion that the complaint does not state a plausible claim for relief under the state-created danger theory. *See Johnson*, 975 F.3d at 397. As such, permitting Plaintiff to file the proposed second amended complaint, under either Rule 59(e) or Rule 15(a)(2), would be futile.

V.    CONCLUSION

Based on the foregoing, Plaintiff's Motion [38] is denied. An appropriate Order follows.

                                                 *s/Nora Barry Fischer*
                                                 Nora Barry Fischer
                                                 Senior U.S. District Judge

Dated: March 24, 2022

cc/ecf:  All counsel of record.